2021

Willis ARDIS, d/b/a Swan Lake Service Station, Appellant

v. Charles A. COX and Sumter Oil and Gas Company, Inc., Respondents.

(431 S.E. (2d) 267)

Court of Appeals

*S. Jahue Moore*, of *Kirkland, Wilson, Moore, Allen, Deneen & Taylor*, West Columbia, *for appellant*.

*William E. DuRant, Jr.*, of *Schwartz, McLeod, DuRant & Burchstead*, Sumter, *for respondents*.

Heard Apr. 14, 1993; Decided June 1, 1993.

Reh. Den. June 29, 1993.

SHAW, Judge:

Willis Ardis sued Charles Cox and Sumter Oil & Gas Company, Inc. (collectively referred to as "Cox") for fraud and violation of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10 (1976), *et seq.*, (SCUTPA) arising out of Ardis's purchase of underground gasoline storage tanks from Cox. The trial court granted summary judgment for Cox on Ardis's claims but allowed Ardis to amend his complaint to allege breach of contract. Ardis appeals and we affirm.

Ardis leased and operated a gasoline service station in Sumter. He leased the premises from a third individual not involved in this matter. The underground storage tanks were owned by Cox and Cox supplied Ardis with gasoline.

In March 1987, Cox agreed to sell the underground storage tanks to Ardis. As part of the transaction, Cox agreed to sell gasoline to Ardis thereafter for one cent over cost per gallon. Cox told Ardis that the tanks held 8,000 gallons each so that Ardis could take advantage of the price discount by purchasing higher quantities. Cox did not tell Ardis of the lack of DHEC registration nor possible related penalties. He also did

not tell Ardis about possible environmental and cost consequences involved with the purchase.

After the purchase, Ardis learned the tanks were in violation of DHEC registration regulations. He also found out that they would hold only 6,000 gallons of fuel and there were significant environmental problems associated with ownership and maintenance of the tanks rendering the tanks unfit for gasoline storage. Ardis subsequently registered the tanks, had environmental tests performed and, ultimately had the tanks removed from the property.

## I.

Ardis first argues the trial judge erred in granting summary judgment to Cox on the fraud cause of action. We disagree.

### A. Actual Fraud

Fraud is not presumed, but must be shown by clear, cogent, and convincing evidence. In order to prove fraud, the following elements must be shown: (1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury. *King v. Oxford*, 282 S.C. 307, 318 S.E. (2d) 125 (Ct. App. 1984). A complaint is fatally defective if it fails to allege all nine elements of fraud. *Inman v. Ken Hyatt Chrysler Plymouth, Inc.*, 294 S.C. 240, 363 S.E. (2d) 691 (1988). Where the complaint omits allegations on any element of fraud, the trial court should grant the defendant's motion to dismiss the claim. *Id.* Further, Rule 9(b), SCRCP provides:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Ardis contends each element of fraud can firmly be established. He argues each of these elements are established as to Cox's misrepresentation of the capacity of the tanks. The trial judge ruled that (1) there was no evidence

Cox intentionally misrepresented the capacity, (2) because Ardis operated the tanks three years prior to the sale and could have easily checked the capacity and because the sale excluded all warranties and included a general release, there was no evidence Cox fraudulently misrepresented the capacity, and (3) even assuming fraud, Ardis did not rely on the capacity of the tanks in purchasing them.

In reviewing the complaint, we note that Ardis does not specifically allege either (1) intent that the representation be acted upon or (2) the hearer's right to rely. The complaint does allege that Ardis "reasonably relied" which may be sufficient to comply with the "hearer's right to rely" element. However, there is absolutely no allegation as to the "intent that the representation be acted upon" element. Thus, the complaint is fatally defective. Further, the trial judge found no evidence of an intentional misrepresentation of tank capacity. Ardis argues that Cox's testimony (regarding his desire to sell the tanks in part because of the underground storage regulations) "fulfills this element of fraud." We disagree. This is inadequate as independent evidence of the element of intent. Ardis is asking us to presume intent by the mere fact that Cox desired the sale to occur. The law clearly requires more.

### B. Constructive Fraud

While it is possible to establish constructive fraud in the absence of the element of intent, we find the facts of this case do not support constructive fraud either. To establish constructive fraud, all elements of actual fraud except the element of intent must be established. *O'Quinn v. Beach Associates*, 272 S.C. 95, 249 S.E. (2d) 734 (1978). Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud while intent to deceive is an essential element of actual fraud. The presence or absence of such an intent distinguishes actual fraud from constructive fraud. *Giles v. Lanford & Gibson, Inc.*, 285 S.C. 285, 328 S.E. (2d) 916 (Ct. App. 1985). However, in a constructive fraud case, where there is no confidential or fiduciary relationship, and an arm's length transaction between mature, educated people is involved, there is no right to rely. *Poco-Grande Investments v. C & S Family Credit, Inc.*, 301 S.C. 322, 391 S.E. (2d) 735 (Ct. App. 1990). This is especially true in

circumstances where one should have utilized precaution and protection to safeguard his interests. *Id.* For reasons discussed below, we find no confidential or fiduciary relationship between the parties giving Ardis a right to rely. Being an arm's-length transaction between mature, educated people, we find this matter fails to meet the elements necessary to show constructive fraud. We further note Ardis failed to allege constructive fraud or the existence of a fiduciary or confidential relationship.

### C. Fraudulent Concealment

Ardis asserts Cox was guilty of fraudulent concealment because Cox knew the tanks would not hold 8,000 gallons, the tanks could have an environmental impact, and the tanks were not registered. He contends Cox had a duty to disclose based on their fiduciary relationship which he asserts arose from a franchise agreement and the relationship between the parties.

Nondisclosure is fraudulent when there is a duty to speak. *Manning v. Dial,* 271 S.C. 79, 245 S.E. (2d) 120 (1978). *See also Jacobson v. Yaschik,* 249 S.C. 577, 155 S.E. (2d) 601 (1967) (nondisclosure becomes fraudulent when it is the duty of the party having knowledge of the facts to uncover them to the other). In *Jacobson,* the Court stated:

> The duty to disclose may be reduced to three distinct classes: (1) where it arises from a preexisting definite fiduciary relation between the parties; (2) where one party expressly reposes a trust and confidence in the other with reference to the particular transaction in question, or else from the circumstances of the case, the nature of their dealings, or their position towards each other, such a trust and confidence in the particular case is necessarily implied; (3) where the very contract or transaction itself, in its essential nature, is intrinsically fiduciary and necessarily calls for perfect good faith and full disclosure without regard to any particular intention of the parties.

*Jacobson,* 155 S.E. (2d) at 605.

The trial judge found there was no allegation of a fiduciary or confidential relationship between the parties, no evidence such a relationship existed and this assertion was not properly

raised in the pleadings as required by Rule 9, SCRCP. He also found the federal statute relied on by Ardis to show a fiduciary relationship based on a franchise limited the definition of franchise to its provisions which were inapplicable to the case at hand. Further, the trial judge noted that Ardis, in his deposition, testified he never entered into any sort of franchise agreement with Phillips 66 and found there was no franchise or special relationship between the parties giving rise to a confidential or fiduciary relationship.

A review of the complaint reveals a failure to allege any kind of fiduciary or confidential relationship between the parties. Neither does it specifically raise the issue of fraudulent concealment or nondisclosure. Ardis does not appeal from the trial judge's ruling that these assertions were not properly raised under Rule 9, SCRCP. Thus, the trial judge's ruling must stand. The complaint is deemed fatally defective in this respect. Further, a review of the record reveals Ardis did, in fact, testify that he never entered into any sort of franchise agreement with Phillips 66 and was under no obligation to make any reports to Phillips. He stated his relationship with Sumter Oil and Gas was that he "would buy gas from them" and "he (Cox) owned the pumps."

Accordingly, we find the trial judge properly granted summary judgment on the fraud cause of action.

II.

Ardis next argues the court erred in granting summary judgment on his cause of action alleging Cox violated the SCUTPA. The trial court ruled that the transaction did not affect the public and was beyond the scope of the Act. The trial court found the only evidence was that this was an isolated sale between private individuals and that no other similar transactions were made or contemplated by Cox. The court ruled that there was no evidence that the transaction would affect the public because it was capable of repetition.

The SCUTPA is unavailable to redress private wrongs if the public interest is unaffected. *LaMotte v. The Punch Line of Columbia, Inc.*, 296 S.C. 66, 370 S.E. (2d) 711 (1988); *Noack Enterprises, Inc. v. Country Corner Interiors*, 290 S.C. 475, 351 S.E. (2d) 347 (Ct. App. 1986). An unfair or deceptive act or practice that affects only the parties

to a trade or a commercial transaction is beyond the Act's embrace. *Noack.* Unfair or deceptive acts or practices have the potential for repetition. *Id.* A deliberate or intentional breach of a valid contract, without more, does not constitute a violation of the SCUTPA. *The Key Co., Inc. v. Fameco Distributors, Inc.,* 292 S.C. 524, 357 S.E. (2d) 476 (Ct. App. 1987). Otherwise, every intentional breach of a contract within a commercial setting would constitute an unfair trade practice and thereby subject the breaching party to treble damages. *Id.*

We agree with the trial court that this case appears to involve, at best, an intentional breach of contract within a commercial setting. Accordingly, we affirm the grant of summary judgment on the Unfair Trade Practices claim.

Affirmed.

CURETON and GOOLSBY, JJ., concur.